**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                    )
ANNETTE GREGORY BARNES,             )
                                    )
            Plaintiff,              )
                                    )
        v.                          )       Civil Action No. 03-2547 (RWR)
                                    )
DISTRICT OF COLUMBIA, <u>et al.</u>, )
                                    )
            Defendants.             )
_____  )


<u>MEMORANDUM OPINION</u>

Plaintiff, Annette G. Barnes, brings this action individually and as the personal representative of the estate of her late husband, Kenneth Barnes, Jr. against the District of Columbia ("the District"), and Gayle Turner, Administrator of the District's Youth Service Administration ("YSA"),[1] alleging violations of the decedent's constitutional rights under 42 U.S.C. § 1983 and District of Columbia common law.  The defendants move for judgment on the pleadings, or for summary judgment, arguing that Barnes pled no protected constitutional interest and her common law claims are barred by the public duty doctrine.  Because Barnes has pled no constitutionally protected interest and because the defendants owed no special duty of care

_____

[1]  Claims against Turner in her official capacity have been dismissed.  <u>Barnes v. Dist. of Columbia</u>, Civ. A. No. 03-2547 (RWR), 2005 WL 1241132, at *3 (D.D.C. May 24, 2005).  The claims against Turner in her individual capacity remain.

-2-

to either Barnes or the decedent, the motion for judgment on the

pleadings will be granted.[2]

## BACKGROUND

On September 24, 2001, James Davon Hill shot and killed

Barnes' husband during an armed robbery attempt at the decedent's

store, Boutique U.  (Am. Compl. ¶¶ 17, 18.)  Hill, a ward of the

District and a three-time escapee from a group home controlled by

the YSA, had escaped from a group home a fourth time two months

prior to the robbery attempt.  (Id. ¶ 19.)  Barnes alleges that

the defendants deprived the decedent of his constitutional

interests in life and property by "neglecting to properly

supervise a convicted criminal who was known to flee from group

homes."  (Id. ¶¶ 30-31.)  Barnes also brings a survival claim

seeking recovery for her husband's wrongful death and for the

defendants' negligent hiring, negligent supervision, and

---

[2] Former District Mayor Anthony Williams was also named as
a defendant and Barnes' complaint raises the same claims against
Mayor Williams as were raised against the other defendants.  The
same deficiencies in Barnes' pleading that doom her claims
against the other defendants also doom her claims against Mayor
Williams.  Under those circumstances, dismissal of claims against
Mayor Williams is warranted, even though he did not join in the
defendants' motion for judgment on the pleadings.  See Bennett v.
Stephens, Civ. A. No. 88-2610 (RCL), 1989 WL 17751, at *5 (D.D.C.
Feb. 23, 1989) (dismissing claims sua sponte against defendants
who did not respond to plaintiff's complaint because the same
deficiencies existed); cf. Whitehead v. New Line Cinema, Civ. A.
No. 98-1231 (PLF), 2000 WL 33351821, at *3 (D.D.C. June 4, 2000)
(granting summary judgment sua sponte for defendants where "the
claims against these purported defendants [were] identical to
those against the defendants who ha[d] responded to plaintiff's
allegations and . . . premised on the same theories").

-3-

negligent infliction of emotional distress.  (Id. ¶ 1.)  The
defendants move for judgment on the pleadings claiming that
Barnes has pled no constitutionally protected property or liberty
interest in support of her constitutional claims and that her
negligence claims are barred by the public duty doctrine.

## DISCUSSION

"After the pleadings are closed . . ., any party may move
for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  The
motion will be granted where the moving party demonstrates that
"no material fact is in dispute," and that the party is "entitled
to judgment as a matter of law."  Peters v. Nat'l R.R. Passenger
Corp., 966 F.2d 1483, 1485 (D.C. Cir. 1992) (internal quotations
omitted).  In reviewing motions for judgment on the pleadings,
courts "accept as true the allegations in the opponent's
pleadings" and "accord the benefit of all reasonable inferences
to the non-moving party."  Haynesworth v. Miller, 820 F.2d 1245,
1249 n.11 (D.C. Cir. 1987); see Peters, 966 F.2d at 1485 (in a
motion under Rule 12(c), the court "view[s] the facts presented
in the pleading and the inferences to be drawn therefrom in the
light most favorable to the nonmoving party").  "A court may not
consider matters outside the pleadings and is 'limited to
considering facts alleged in the complaint, any documents
attached to or incorporated in the complaint, matters of which
the court may take judicial notice, and matters of public

-4-

record.'"  Johnson v. Dist. of Columbia, Civil Action No. 03-2548

(GK), 2006 WL 2521241, at *2 (D.D.C. Aug. 30, 2006) (quoting

Robinson v. Dist. of Columbia, 403 F. Supp. 2d 39, 47 (D.D.C.

2005)).

I.    CONSTITUTIONAL CLAIMS

      A.    Property interest

      The Fifth Amendment provides that "[n]o person shall . . .

be deprived of . . . property, without due process of law."  U.S.

Const. amend. V.  While a governmental benefit may constitute a

protected property interest, see, e.g., Goldberg v. Kelly, 397

U.S. 254 (1970); Matthews v. Eldridge, 424 U.S. 319 (1976), not

every governmental benefit enjoyed by an individual represents a

constitutional interest protected by the Due Process Clause.

Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005).  To

have a constitutional interest in a governmental benefit, "a

person must have more than an abstract need or desire" and "more

than a unilateral expectation of it.  He must instead have a

legitimate claim of entitlement to it."  Bd. of Regents of State

Colls. v. Roth, 408 U.S. 564, 577 (1972).  "A person's interest

in a benefit is a 'property' interest for due process purposes if

there are . . . rules or mutually explicit understandings that

support his claim of entitlement to the benefit . . . ."  Perry

v. Sindermann, 408 U.S. 593, 601 (1972).  These entitlements are

created by sources independent of the constitution, such as state

-5-

law.  Castle Rock, 545 U.S. at 756.  "[T]he 'independent source' underlying a property interest in a particular benefit must be clear enough to provide a citizen with 'an objectively reasonable expectation that he is entitled to' that benefit."  Johnson v. Dist. of Columbia, Civ. Action No. 03-2548 (GK), 2006 WL 2521241, at *4 (D.D.C. Aug. 30, 2006).  Additionally, "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion."  Castle Rock, 545 U.S. at 756.  "Unless the Government's provision of a particular benefit is mandatory, therefore, an individual cannot claim a constitutionally-protected interest in it."  Johnson, 2006 WL 2521241, at *5.

Barnes alleges that her husband had a constitutionally protected property interest in, and therefore a legitimate claim of entitlement to, "the supervision of group home residents within the juvenile system and the retrieval of absconders from group homes."  (Pl.'s Opp'n to Defs.' Mot. for J. on the Pleadings ("Opp'n") at 5.)  Barnes identifies as the source for this entitlement a consent decree entered into by the defendants in Jerry M. v. Dist. of Columbia, 571 A.2d 178 (D.C. 1990) ("Jerry M. Consent Decree").[3]  (Opp'n at 5-6.)  Barnes argues

---

[3]  "In Jerry M., a class of youth offenders in the custody of the District's juvenile justice system challenged that system on the ground that it failed to provide adequate education and rehabilitation opportunities.  In settling that case, the District agreed to design placement alternatives for youth no longer requiring secure confinement and to implement a juvenile justice system with a variety of community based services and

-6-

that "[b]y entering into the Consent Decree, Defendants affirmatively assumed control of those juveniles committed to the juvenile justice system who would be housed and cared for in group homes and thus, became liable for the supervision of the juveniles residing in the group homes and absconding therefrom." (Id. at 6.)

However, no legitimate claim of entitlement arises from the Jerry M. Consent Decree.  The decree does not call for the mandatory policing Barnes describes.  See Johnson, 2006 WL 2521241, at *4 ("[T]he Jerry M. Consent Decree does not impose on the District a duty either to prevent abscondences from juvenile group homes or to arrest any individual who may escape."); Turner v. Dist. of Columbia,[4] No. Civ. A. 04-0048 (RMC), 2006 WL 566121, at *9 (D.D.C. Mar. 7, 2006) ("[T]he Jerry M. Consent Decree imposes no type of mandatory action that could give rise to a constitutionally-protected property interest.").  Rather, even

_____

thereby reduce the time youth were inappropriately housed in secure facilities.  Specifically, the Consent Decree required increased use of diversion from prosecution, temporary housing for youth whose parents cannot be located, increased use of home detention, short term foster care, alternatives to secure detention[,] new treatment facilities and improved record keeping and monitoring of placements."  See Johnson, 2006 WL 2521241, at *4 (quoting Jerry M. v. Dist. of Columbia, 571 A.2d 178, 180-82 (D.C. 1990) (internal citation, alteration, and quotation omitted).

[4]  The same juvenile who shot and killed the decedent here after escaping from a group home was also involved in the killing of the decedent in Turner under markedly similar circumstances. See Turner, 2006 WL 566121, at *1.

-7-

with the Jerry M. Consent Decree, the decision of whether and how
to deal with a juvenile's escape from a group home is entirely
discretionary.  See Johnson, 2006 WL 2521241, at *5
("[I]ndividuals do not have a property interest in police
protection generally, or even in the detention or arrest of a
particular individual, because the 'well-established tradition of
police discretion' allows officers to decide whether and when to
make an arrest."  (quoting Castle Rock, 545 U.S. at 760-61)).  As
Barnes has pled no constitutionally-protected property interest,
her claims premised upon a deprivation of property fail.

    B.   Liberty interest

    Barnes alleges that "Kenneth's right to life is clearly
encompassed in the protected right of liberty within [the] Fifth
Amendment."  (Opp'n at 8.)  The defendants argue that because
Barnes' complaint alleges a failure to act on the part of
defendants, instead of an affirmative act, Barnes' claim cannot
prevail.  "[N]othing in the language of the Due Process Clause
itself requires the State to protect life, liberty, and property
of its citizens."  DeShaney v. Winnebago County Dep't of Soc.
Servs., 489 U.S. 189, 195 (1989).  "[A] State's failure to
protect an individual against private violence . . . does not
constitute a violation of the Due Process Clause."  Id. at 197.
However, the state endangerment theory "imposes upon the State
affirmative duties of care and protection with respect to

-8-

particular individuals . . . where the state creates a dangerous
situation or renders citizens more vulnerable to danger." Butera
v. Dist. of Columbia, 235 F.3d 637, 648-49 (D.C. Cir. 2001).
Where this theory is applied, "an individual can assert a
substantive due process right to protection by the District of
Columbia from third-party violence when District of Columbia
officials affirmatively act to increase or create the danger that
ultimately results in the individual's harm." Id. at 651.

    The state endangerment theory applies only where an
affirmative act by a state or state actor increases or creates
danger that harms an individual and where that conduct is so
egregious as to shock the conscience. See id. at 650, 651; see
also Briscoe v. Potter, 355 F. Supp. 2d 30, 43 (D.D.C. 2004)
("[W]hether Defendants can be held liable under the theory of
State Endangerment requires a two-part analysis, which raises the
following questions: (1) has there been an affirmative act by
Defendants to create or increase the danger that resulted in harm
to Plaintiffs and, if so, (2) does that act shock the
conscience?").  An affirmative state act that shocks the
conscience would involve "'*deliberate* decisions of government
officials to deprive a person of life, liberty or property.'"
Fraternal Order of Police Dep't of Corr. Labor Comm. v. Dist. of
Columbia, 375 F.3d 1141, 1146 (D.C. Cir. 2004) (emphasis in
original) (quoting Daniels v. Williams, 474 U.S. 327, 331

(1986)); see County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998) (holding that an action that shocks the conscience is "something more than negligence but less than intentional conduct, such as recklessness or gross negligence" (internal quotation marks omitted)). "No constitutional liability exists where the State actors had no hand in creating a danger but [simply] stood by and did nothing when suspicious circumstances dictated a more active role for them." Butera, 235 F.3d at 650 (alteration in original) (internal quotation marks omitted).

In Butera, a mother sued the District alleging that her son died because police officers inadequately protected him after he agreed to assist them in an undercover operation. See id. at 640. Police there directed the son to enter a home to make an undercover drug purchase. However, he was beaten to death prior to entry. Despite assurances that the officers would exercise care to ensure that plaintiff's son was not harmed, see id. at 642, the officers admittedly had not been monitoring plaintiff's son when he was attacked. The D.C. Circuit found, though, that the officers' failure to adequately monitor plaintiff's son did not constitute affirmative conduct for the purposes of invoking the state endangerment theory. See id. at 650.

Here, Barnes' complaint alleges that the defendants deprived her husband of his liberty by "neglecting to properly supervise a

-10-

convicted criminal who was known to flee from group homes."[5]
(Am. Compl. ¶ 30.)  If a police failure to provide proper
surveillance and protection to a civilian whom they asked to
enter a drug sale location where lethal danger lurked did not
constitute an actionable affirmative act under the state
endangerment theory, see Butera, 235 F.3d at 650, it is difficult
to see how Barnes' allegation would either.

Similarly, Barnes has not demonstrated how defendants'
conduct was so egregious as to shock the conscience.  Even if
defendants' failure to prevent Hill's escape and to apprehend him
contributed to the decedent's death, such "'actions,' which are
in effect inaction, cannot be deemed to be 'so egregious, so
outrageous, that it may fairly be said to shock the contemporary
conscience." Johnson, 2006 WL 2521241, at *8 (quoting Butera,
235 F.3d at 651); cf. Pena v. Deprisco, 432 F.3d 98, 102 (2d Cir.
2005) (applying the state endangerment theory where law
enforcement officials implicitly encouraged drunk driving); L.W.
v. Grubbs, 974 F.2d 119, 121 (9th Cir. 1992) (state endangerment
theory applied where a custodial institution assigned a known
violent sex offender to assist a female nurse in unguarded

---

[5]  While Barnes' opposition expands this allegation
regarding both liberty and property interests to include
defendants' "failure to supervise juvenile residents of group
homes and the failure to apprehend absconders from the group
homes" (Opp'n at 10), this expansion does not affect the analysis
regarding either interest.

-11-

proximity); <u>Wood v. Ostrander</u>, 879 F.2d 583, 590 (9th Cir. 1989)
(holding that police officer's conduct shocked the conscience
where officer stranded a woman in a high-crime area at night,
forced her to hitchhike home, and she was subsequently raped);
<u>Briscoe v. Potter</u>, 355 F. Supp. 2d 30, 42 (D.D.C. 2004) (finding
that postal worker plaintiffs had sufficiently pled each element
of the state endangerment theory where they were exposed to
anthrax and their supervisors falsely told them that they were
safe from contamination).

　　　The defendants will be granted judgment on the pleadings
with respect to Barnes' constitutional due process claims.

II.　NEGLIGENCE CLAIMS

　　　The defendants argue that "plaintiffs' negligence claims are
barred, in their entirety, by the public duty doctrine."  (Defs.'
Mot. for J. on the Pleadings, or Summ. J. ("Defs.' Mot.") at 17.)
District of Columbia law applies to Barnes' common law causes of
action.  <u>See</u> <u>Johnson</u>, 2006 WL 2521241, at *8.  "It is well
established in this jurisdiction that the District Government
owes no general duty of care to its citizens."  <u>Id.</u>; <u>see</u> <u>Joy v.
Bell Helicopter Textron, Inc.</u>, 999 F.2d 549, 561 (D.C. Cir. 1993)
(finding that "the District is generally immune from tort
liability for actions taken by its officers in the course of
providing public services").  "The public duty doctrine shields
the municipality and its agents from suits attacking the manner

in which the District of Columbia deploys its manpower and undertakes to discharge its obligation to the general public." <u>Varner v. Dist. of Columbia</u>, 891 A.2d 260, 274 (D.C. 2006); <u>see</u> <u>Johnson</u>, 2006 WL 2521241, at *11 (barring, under the public duty doctrine, negligence claims brought against a District employee in both her official and individual capacities); <u>Turner</u>, 2006 WL 566121, at *13 (same).

"[A]bsent some 'special relationship' between the government and the individual, the District's duty is to provide public services to the public at large." <u>Liser v. Smith</u>, 254 F. Supp. 2d 89, 102 (D.D.C. 2003) (quoting <u>Hines v. Dist. of Columbia</u>, 580 A.2d 133, 136 (D.C. 1990)). A special relationship is established where there is "(1) a direct contact or continuing contact between the victim and the government agency or official; and (2) a justifiable reliance on the part of the victim." <u>Boone</u> <u>v. Dist. of Columbia</u>, Civil Action No. 06-611, 2007 U.S. Dist. LEXIS 2602, at *2 (D.D.C. Jan. 12, 2007) (quoting <u>Warren v. Dist.</u> <u>of Columbia</u>, 444 A.2d 1, 8 (D.C. 1981)). The first prong of this test requires privity between the District and the injured individual, such that the individual is "'set[] apart from the general public.'" <u>Griggs v. Wash. Metro. Area Transit Auth.</u>, 66 F. Supp. 2d 23, 29 (D.D.C. 1999) (quoting <u>Warren</u>, 444 A.2d at 11). Only by "'prov[ing] that the District owed a special duty to the injured party, greater than or different from any duty

-13-

which it owed to the general public," can a plaintiff overcome the public duty doctrine's bar to recovery. <u>Griggs</u>, 66 F. Supp. 2d at 29 (quoting <u>Powell v. Dist. of Columbia</u>, 602 A.2d 1123, 1129 (D.C. 1992)).

Because "[t]he District's duty to place youthful offenders in group homes where they can be supervised and monitored is a duty owed to the public at large," the defendants contend that the public duty doctrine bars Barnes' negligence claims. (Defs.' Mot. at 22.)  In response, Barnes argues that the <u>Jerry M.</u> Consent Decree "sufficiently created a legal duty, or special duty, which requires Defendants to use reasonable care in supervising group home residents and absconding juveniles." (Opp'n at 14.)  Barnes claims that "where a specific decree creates a duty on behalf of Defendants, the [public duty] doctrine cannot nullify such a duty."  (<u>Id.</u>)

Courts interpreting the <u>Jerry M.</u> Consent Decree have found that the benefits, if any, of the decree "redound to the public at large, and possibly to the juveniles in the care and custody of the District of Columbia."  <u>Johnson</u>, 2006 WL 2521241, at *9; <u>see</u> <u>Turner</u>, 2006 WL 566121, at *12-13 (barring plaintiff's negligence claims in a nearly identical case by applying the public duty doctrine).  Despite Barnes' conclusory allegations that the <u>Jerry M.</u> Consent Decree imposed a special duty on the defendants, Barnes has not demonstrated that the decree creates

-14-

the type of special relationship necessary to impose a special
duty on the defendants.  Additionally, while Barnes claims that
"[t]he public duty doctrine no longer serves the purpose for
which it was conceived" and should be disregarded (Opp'n at 18),
that doctrine has been recognized by the District of Columbia
Circuit as a viable doctrine that can bar negligence claims
brought against the District government.  See, e.g., Joy, 999
F.2d 549.  Barnes' common law negligence claims thus are barred
by the public duty doctrine.

### CONCLUSION

Barnes has suffered a tragic loss.  However, because she has
failed to plead a constitutionally-protected property or liberty
interest and her common law negligence claims are barred by the
public duty doctrine, the defendants' motion for judgment on the
pleadings will be granted.  A final order accompanies this
memorandum opinion.

SIGNED this 6th day of June, 2007.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge